UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JODI KATHLEEN MIRABELLO          CIVIL ACTION

VERSUS                NO. 15-845-JWD-RLB

CAROLYN COLVIN,
COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION

**NOTICE**

 Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

 Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

   **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

 Signed in Baton Rouge, Louisiana, on February 14, 2017.

                   _____
                   RICHARD L. BOURGEOIS, JR.
                   UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JODI KATHLEEN MIRABELLO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-845-JWD-RLB** |
| **CAROLYN COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Jodi Kathleen Mirabello (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-6), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits alleging that she became disabled on June 1, 2011 because of degenerative disc disease, herniated disc and lumbar spine impairment. (Tr. 57, 108).  Plaintiff's application was eventually denied by an Administrative Law Judge (ALJ), who first held an administrative hearing (Tr. 25-49) before issuing an unfavorable decision on May 19, 2014. (Tr. 13-21).  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 20, 2015. (Tr. 1-6).  The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to

resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic

work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff met the insured status requires of the Social Security Act through December 31, 2015.

2. Plaintiff had not engaged in substantial gainful activity since June 1, 2011.

3. Plaintiff suffered from the following severe impairments: disorders of the back and obesity.

4. Plaintiff did not meet or medically equal any listed impairment.

5. Plaintiff retained the residual functional capacity (RFC) to perform unskilled sedentary work with occasional changes to work settings. In addition, she is further limited to: occasional use of ramps or stairs; occasional balancing, stooping, kneeling, crouching and crawling; no use of ladders, ropes or scaffolds; and no exposure to hazardous machinery or unprotected heights.

6. Plaintiff could no longer perform her past relevant work as a Special Education Teacher (light, skilled, SVP 7).

7. Plaintiff was considered a younger individual.

>   8. Plaintiff had a high school education and was able to communicate in English.

>   9. The transferability of job skills was not material to the ultimate determination.

>   10. Considering Plaintiff's age, education, work experience and RFC, there existed a significant number of jobs in the national economy that Plaintiff could perform.

(Tr. 15-21).

## IV.   DISCUSSION

### A.   Consideration of Medical Opinion Evidence

As her first assignment of error, Plaintiff argues that the ALJ erroneously rejected the February 13, 2014 Medical Source Statement (MSS) of her treating pain-management physician, Dr. Elizabeth Russo-Stringer, and that "new evidence [(from Dr. Russo-Stringer)] before the Appeals Council warrants remand." (R. Doc. 8 at 11); (Tr. 417-23); (Tr. 56).

In her decision, the ALJ discussed the entire medical record, including those findings made by treating, examining and non-examining physicians. (Tr. 16-19).  As for the opinion evidence, the ALJ gave great weight to the opinion of Dr. Stephen Wilson, the consultative examiner. (Tr. 17-18).  "[S]ome weight" was given to non-examining consultant Dr. Timothy Honigman's opinion that Plaintiff could perform some form of sedentary work as it was "consistent with the evidence as a whole." (Tr. 17-18).  Finally, the ALJ afforded "little weight" to the opinion of treating physician Dr. Russo-Stringer. (Tr. 18).

The ALJ began her discussion of Dr. Russo-Stringer's opinion by pointing out that Dr. Russo-Stringer's MSS ("Lumbar Spine Impairment Questionnaire") was signed and "dated the same date as the hearing, February 13, 2014." (Tr. 18); (Tr. 417-23).  In addition, the ALJ "recognize[d] that Dr. Russo-Stringer's opinion is [likewise] dated the same date that she states the claimant's symptoms commenced, which [again] happens to be the same date of the administrative hearing." (Tr. 18).  The Lumbar Spine Impairment Questionnaire specifically

asks, "In your best medical opinion, what is the earliest date that the description of symptoms and limitations in this questionnaire applies," to which Dr. Russo-Stringer answered, "today." (Tr. 422). The ALJ also notes that Plaintiff's attorney did not take the opportunity to address the timing of the opinion. (Tr. 18, 46). As such, in her May 19, 2014 decision, the ALJ gave "little weight to Dr. Russo-Stringer's opinion." (Tr. 18).

Following the ALJ's decision, Plaintiff sought review of the ALJ's findings before the Appeals Council. In connection with this review, Plaintiff submitted additional evidence, including a November 2, 2014 letter from Dr. Russo-Stringer. (Tr. 56). In this letter, Dr. Russo-Stringer explains:

> . . . . [Plaintiff's] pain became disabling in June 2011 when she became unable to tolerate work. . . . Unfortunately, I was given her [Intake Questionnaire] the morning it was due and so accidentally filled in the wrong date of onset of symptoms. I want to emphasize that her symptoms began long before her application for disability as noted in my visit notes. . . .

(Tr. 56). Regarding Plaintiff's request for review, the Appeals Council considered the reasons Plaintiff "disagree[d] with the [ALJ's] decision and the additional evidence," but found it "did not provide a basis for challenging the [ALJ's] decision." (Tr. 2). The Appeals Council specifically mentioned Dr. Russo-Stringer's November 2, 2014 clarification letter, but found it didn't warrant remand as it post-dated the ALJ's May 2014 decision. (Tr. 2).

Plaintiff claims, based on Dr. Russo-Stringer's November 2, 2014 letter, that substantial evidence does not support the ALJ's decision. Specifically, Plaintiff argues that the reason the ALJ originally rejected Dr. Russo-Stringer's February 13, 2014 MSS — the symptom commencement date — was cured by Dr. Russo-Stringer's November 2, 2014 follow-up letter clarifying that Plaintiff's "symptoms began long before her application for disability" (Tr. 56). (R. Doc. 8 at 11-17). Therefore, according to Plaintiff, substantial evidence no longer supports

the ultimate finding and the Appeals Council should have remanded the case to the ALJ after reviewing the November 2014 letter.

To begin, Plaintiff is incorrect that the ALJ only rejected Dr. Russo-Stringer's opinion because she opined that Plaintiff's disabling symptoms commenced on February 13, 2014. Rather, the ALJ rejected the MSS for two reasons — one being Dr. Russo-Stringer's statement on commencement and the second being the fact that the MSS was signed and dated the morning of Plaintiff's February 13, 2014 hearing. Each reason, standing alone, provided a permissible basis on which the ALJ could reject Dr. Russo-Stringer's MSS. *See Myers v. Barnhart*, 57 F. App'x 990, 996 (3d Cir. 2003) (ALJ properly rejected opinion of treating physician in favor of non-examining state agency consultants and consultative examiner where the treating physician opined that claimant's allegedly disabling symptoms commenced only one day before the hearing); *Harrell v. Bowen*, 862 F.2d 471, 482 (5th Cir. 1988) (ALJ may give diminished weight to certain probative evidence provided by claimant where the probative evidence, created only after the filing of claimant's application, has clearly been prepared in anticipation of litigation). And so, whether the November 2, 2014 'clarification' letter is sufficient to cure the first deficiency sighted by the ALJ — the date the symptoms commenced — is not dispositive. Even if the letter did resolve the first deficiency, it still does not cure the second deficiency cited by the ALJ (and overlooked by Plaintiff) — the date Dr. Russo-Stringer's opinion was rendered.

Since the ALJ could rely on either deficiency to discount Dr. Russo-Stringer's February opinion, the November 2, 2014 letter resolving only one deficiency is not the type of "significant," new evidence that would cast doubt on the existence of substantial evidence, as Plaintiff suggests.[1] *Cf. Sun v. Colvin*, 793 F.3d 502, 511-13 (5th Cir. 2015) (remand warranted

---

[1] Plaintiff also seems to suggest that 20 C.F.R. § 404.1527(e)(3) applies, and because it does, the Appeals Council was obligated to evaluate and discuss Dr. Russo-Stringer's November 2, 2014 letter before "mak[ing] a decision."

where new evidence before appeals council, indicating serious mobility issues following a second surgery, was significant enough to cast doubt on the ALJ's finding that claimant "was able to ambulate effectively" — the finding on which the ALJ based his ultimate determination).

Rather, substantial evidence still supports the ALJ's decision to give diminished weight Dr. Russo-Stringer's opinion because it was hastily signed on the morning of the administrative hearing. (Tr. 18); (Tr. 56) (Dr. Russo-Stinger explains that she wrote down the wrong commencement date because she was first provided with the questionnaire on the morning it was due); (Tr. 418) (In the February 2014 MSS, Dr. Russo-Stringer gave the following response to a request for specific "laboratory and diagnostic test results:" "ask for records – not available at this late date (2/13/14).").

On multiple occasions, courts have recognized that ALJs may discount medical opinions rendered around the time of the administrative hearing, as being prepared in "anticipation of litigation." *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (ALJ may discount physician's opinion or treatment note resulting from claimant's encounter with physician that is linked primarily to claimant's "quest to obtain benefits, rather than to obtain medical treatment"); *Bienemy v. Astrue*, 2012 WL 910229, at *8 (E.D. La. Feb. 13, 2012) ("That the form was completed by Dr. Lata only two days before the administrative hearing also raises the spectre that it was prepared in anticipation of litigation and thus is entitled to diminished weight."); *Price v. Astrue*, 2010 WL 3523028, at *12 (E.D. La. July 23, 2010) ("That the form was completed by

---

(R. Doc. 8 at 14). Plaintiff, however, is incorrect. The Appeals Council did not "make[] a decision" in Plaintiff's case, which would trigger the application of 20 C.F.R. § 404.1527(e)(3) ("When the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence as administrative law judges follow."). Instead, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Contrary to Plaintiff's argument, "nothing in the Act or regulations requires that the Appeals Council explain its rationale" when denying a request for review. "Instead, the Act does not require the Appeals Council to do anything more than what it did here — state that it considered new and material evidence in deciding whether to grant review." *Whitehead v. Colvin*, 2015 WL 4772311, at *4 (M.D. La. Aug. 12, 2015), *aff'd*, 820 F.3d 776 (5th Cir. 2016).

Dr. Talluri only one week before the administrative hearing also raises the spectre that it was prepared in anticipation of litigation and thus entitled to diminished weight."), *report & recommendation adopted*, 2010 WL 3523045 (E.D. La. Aug. 31, 2010); *Johnson v. Social Security Administration*, 2016 WL 6902115, at *4 (E.D. La. Sept. 23, 2016) (assessment completed 3 weeks after hearing "at the behest of Plaintiff's attorney for the purpose of supporting Plaintiff's disability claims and was therefore not objective."); *Davis v. Colvin*, 2014 WL 7365806, at *2 (E.D. La. Dec. 23, 2014) (The "RFC questionnaire completed by Dr. Calhoun was prepared six days before Davis's hearing, supporting an inference that it was prepared in contemplation of litigation, and that the ALJ was therefore entitled to assign it diminished weight.").

As such, Dr. Russo-Stringer's November 2, 2014 letter does not resolve the second reason cited by the ALJ for diminishing the weight given to Dr. Russo-Stringer's February 2014 opinion. And because this alone was a permissible reason for the ALJ to discount the opinion, the Court finds remand is not warranted, despite Plaintiff's argument.

Second, Plaintiff assumes that the ALJ should have adopted Dr. Russo-Stringers opinion as it was the only medical source statement provided by a treating physician. Moreover, Plaintiff claims, at the very least, the ALJ was required to consider the factors[2] (*Newton* factors) outlined by the regulations, 20 C.F.R. § 404.1527(c), and the Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000), before rejecting the opinion of a treating source. Plaintiff's argument, however, is contrary to Fifth Circuit precedent and must fail.

---

[2] The relevant factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

First, despite the fact that Dr. Russo-Stringer's is the only medical opinion provided by a treating physician, *Newton* does do not apply and the ALJ is "not required to go through all six" factors where the record contains medical evidence from other first-hand sources — examining or not. *Cain v. Barnhart*, 193 F. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458); *see also Qualls v. Astrue*, 339 F. App'x 461, 466-67 (5th Cir. 2009) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it."); *King v. Comm'r of Soc. Sec. Admin.*, 2014 WL 905207, at *4 (M.D. La. March 7, 2014) (*Newton* not applicable when ALJ is presented with competing first hand medical evidence); *Powers v. Comm'r of Soc. Sec. Admin.*, 2014 WL 791867, at *7 (M.D. La. Feb.25, 2014) (same).

The *Newton* factors are therefore inapplicable as the record contains competing, first-hand, medical evidence from multiple sources, including Dr. Stephen M. Wilson, the consultative examiner on whose opinion the ALJ properly relied. *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (The ALJ is not required to consider each of the six *Newton* factors when "there is competing first-hand medical evidence . . . ."). And so, no legal error occurred as the ALJ was not required to analyze the opinion of Dr. Russo-Stringer using the 6 *Newton* factors described in 20 C.F.R. § 404.1527(c)(2)-(6). *See Walker*, 158 F. App'x at 535.[3]

---

[3] Plaintiff additionally claims that the ALJ committed legal error by not re-contact Dr. Russo-Stringer to clarify the commencement date opined in her February 2014 MSS.  According to Plaintiff, "[i]t is inconceivable that the ALJ believed" that Dr. Russo-Stringer had answered the question correctly. (R. Doc. 8 at 12).  Relying on *Newton*, Plaintiff suggests that this obvious error required the ALJ to seek clarification from Dr. Russo-Stringer. (R. Doc. 8 at 12).  Specifically, Plaintiff relies on the *Newton* court's finding that if the ALJ decides the treating source's records are "inconclusive or otherwise inadequate to receive controlling weight," absent other first-hand evidence from an examining physician, 20 C.F.R. § 404.1512(e) requires the ALJ to re-contact the treating source for clarification. *Newton*, 209 F.3d at 453.  However, 20 C.F.R. § 404.1512(e), the regulation on which the relevant part of *Newton* relied, is no longer in effect. *See Ruffins v. Colvin*, 2016 WL 617445, at *5 (M.D. La. Feb. 16, 2016).  In fact, subsection (e)(1) was deleted from 20 C.F.R. § 404.1512 in March of 2012, eliminating the language requiring an ALJ to re-contact a physician or other medical source. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651-01, 2011 WL 7404303 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 404.1520b).  But even if 20 C.F.R. § 404.1512(e) were in effect at the time of the hearing, the need to re-contact Dr. Russo-Stringer would not have arisen as the record contains sufficient evidence from other sources on which the ALJ could (and did) base his decision.

Moreover, substantial evidence supports the ALJ's decision to give diminished weight to Dr. Russo-Stringer's opinion, and instead adopt the opinion of Dr. Stephen M. Wilson, in ultimately finding that Plaintiff was not disabled.

On February 13, 2014, pain-management specialist, Dr. Russo-Stringer, completed a "Lumbar Spine Impairment Questionnaire" — a standard form provided by Plaintiff's attorney on the morning of the administrative hearing. (Tr. 417-230). It consisted of questions about diagnoses and included a preselected checklist of associated symptoms and limitations. (Tr. 417-23). Dr. Russo-Stringer reported that Plaintiff had been diagnosed with failed lumbar fusion syndrome and chronic nerve root injury and that her prognosis was poor. (Tr. 417). When asked to "[i]dentify the positive clinical findings . . . support[ing] [the] diagnosis," Dr. Russo-Stringer indicated: limited range of motion, tenderness and intermittent muscle spasm at the lumbar spine; sensory loss at the lower extremities; and positive straight leg raising test – bilateral. (Tr. 417-18). Dr. Russo-Stringer then listed Plaintiff's "primary symptoms" as: "low back pain that radiates into lower extremities with chronic paresthesias. [Plaintiff] reports resulting fatigue, anxiety and depression." (Tr. 418).

Additionally, she reported that Plaintiff suffered from "daily constant" pain in her "low back and legs." (Tr. 419). To treat this pain, Dr. Russo-Stringer prescribed the following medications; however, she did not indicate that Plaintiff had relayed any resulting side effects, despite being asked to do so: Amlodipine, Fluoxetine, Morphine ER, Naproxen, Robaxin, Roxicodone, and Hydrochlorothiatide. (Tr. 420) ("11. List medication(s) . . . and any side effects your patient has reported."). Finally, when asked to "[i]dentify [supporting] laboratory and diagnostic test results," Dr. Russo-Stringer responded: "[A]sk for records – not available at this late date (2/13/14)." (Tr. 418).

Ultimately, Dr. Russo-Stringer limited Plaintiff to: sitting no more than 3 hours, standing/walking less than 1 hour, lifting no more than 10 pounds on occasion and carrying no more than 20 pounds on occasion. (Tr. 419-20). Dr. Russo-Stringer likewise opined that Plaintiff was unable to continuously sit or stand throughout the day and must instead "get up and move around" every 20 to 30 minutes for 10 minutes at a time. (Tr. 420). Plaintiff should also avoid heights, bending and stooping. (Tr. 422). In addition to these limitations, she opined that the severity of Plaintiff's symptoms would "constantly . . . interfere with attention and concentration," which limited Plaintiff to "low stress" work and would result in "more than three [absences] a month." (Tr. 421-22). "[E]motional factors" — namely, "depression and anxiety" — also contributed to the "severity of [Plaintiff's] symptoms and functional limitations." (Tr. 421). When asked whether and, if so, how often Plaintiff would need to take unscheduled breaks, Dr. Russo-Stringer answered: "Can't work so." (Tr. 422).

Dr. Stephen Wilson examined Plaintiff on March 4, 2013, at the request of the Commissioner. (Tr. 320). Upon examining Plaintiff, Dr. Wilson observed some tenderness, but otherwise did not find any swelling, inflammation, or muscle spasm of the lower back. (Tr. 320). Plaintiff was able to "heel and toe walk," but this did cause some pain. (Tr. 320). Neurological examination of the lower extremities revealed full range of motion and there was no evidence of muscle atrophy, weakness, gross deformity, muscle spasm, or numbness. (Tr. 320). Straight leg raising tests were negative bilaterally and Plaintiff's pulses were palpable and equal. (Tr. 320). Range of motion was "completely normal" in all extremities and joints, and Plaintiff had full range of motion in her back, with the exception of forward flexion. (Tr. 321). Her gait was normal and "there was no evidence of any spasm, neurological deficits or atrophy." (Tr. 321).

Based on his examination, Dr. Wilson found that if Plaintiff "desires and is motivated to do so, she could return to a sedentary type [of work] activity," with "a minimal amount of bending, stooping, crawling or climbing." (Tr. 321).

The ALJ, after thoroughly reviewing the record evidence, gave "great weight" to Dr. Wilson's opinion as it was consistent with the "diagnostic evidence." (Tr. 18). As discussed below, substantial evidence supports this finding. The medical record, including Dr. Russo-Stringer's own treatment notes, does not support the extreme limitations Dr. Russo-Stringer opined on February 13, 2014 and are instead consistent with Dr. Wilson's opinion that Plaintiff was capable of sedentary work activity.

For example, Dr. Russo-Stringer's treatment records indicate findings of "normal" or "nonantalgic" gait, which are inconsistent with the extreme mobility limitations she imposed on Plaintiff. (Tr. 256, 259, 279, 283, 299, 301, 303, 308, 317, 434, 438, 446, 450, 454, 458, 462). Other examining physicians consistently observed gait within normal limits. (Tr. 168, 172, 321). Dr. Russo-Stringer's treatment notes also report full strength and tone in Plaintiff's hips (Tr. 275) and lower extremities (Tr. 256, 287, 290, 299, 301, 434, 446, 450, 454, 458, 462). These findings, which are consistent with those of other examining physicians, (Tr. 181) ("no weakness or falls," "strength . . . maintained"); (Tr. 194) (musculoskeletal – normal strength); (Tr. 320) (no evidence of muscle atrophy or weakness), do not suggest an inability to stand or walk for a total of one hour in a workday. (Tr. 419).

While Dr. Russo-Stringer also opined in the Lumbar Spine Impairment Questionnaire that Plaintiff suffered from limited range of motion in the lumbar spine (Tr. 417), the record contains contradictory findings of normal range of motion in the extremities, joints and spine (Tr. 194) (musculoskeletal – normal range of motion); (Tr. 287) (Dr. Russo-Stringer observed full

range of motion in the lower extremities); (Tr. 194) (back – normal range of motion); (Tr. 321) ("back and neck showed all range of motion to be normal except on forward flexion," "range of motion of all the extremities was completely normal, range of motion of all joints was normal"); (Tr. 446) (Dr. Russo-Stringer observed full range of motion in the lower extremities), all of which support the ALJ's RFC finding and adoption of Dr. Wilson's opinion.

Dr. Russo-Stringer likewise suggested that Plaintiff suffered from sensation loss, however, sensory loss is not consistently observed throughout her treatment notes or the record in general. (Tr. 325) ("sensation is maintained"); (Tr. 194) (no neurological deficits); (Tr. 181-82) (sensation and deep tendon reflexes are maintained); (Tr. 320) ("There is no subjective or objective numbness.").

Inconsistent with Dr. Russo-Stringer's opinion that Plaintiff could not sit for more than 3 hours in a day, Plaintiff told Dr. Kyle Girdod that "walking, bending and riding in the car" increased her pain — she did not mention the type of sitting required for sedentary work. (Tr. 181, 325).

Perhaps most important, Dr. Russo-Stringer's most recent treatment notes indicate an improvement in Plaintiff's pain and other symptoms following the placement of a Spinal Cord Stimulator (SCS) in early 2013. (Tr. 426-70). Beginning in February of 2013, Plaintiff told Dr. Russo-Stringer that the SCS had improved her pain by more than 60 percent. (Tr. 251, 433). During that same visit, Dr. Russo-Stringer noted that Plaintiff would experience muscle spasms for a while following placement of the SCS however, inconsistent with her MSS, she indicated that those spasms would "go away" (Tr. 252). *See Bradly v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion where the evidence supports a contrary conclusion).

Throughout the remainder of those treatment notes, Dr. Russo-Stringer observed normal gait, full lower extremity strength and range of motion, normal bulk and tone in the lower extremities, improved pain management with a reduction in narcotic pain medication, reduced symptoms, improvement in memory and thought, and normal mood and affect. (Tr. 433, 434, 437, 438, 446, 450, 454, 458, 462) (normal gait, full strength and range of motion in the lower extremities, normal bulk and tone); (Tr. 441) (leg pain is better since placement of SCS); (Tr. 443) ("SCS takes care of radiating leg pain" and "overall, pain has improved"); (Tr. 437, 451) (Plaintiff reduced her need for narcotic pain medication and began weaning herself off of it following placement of SCS); (Tr. 447) ("great improvement in memory and thought"); (Tr. 449) (Plaintiff has "done well with present medication regimen and SCS"). On October 11, 2013, Dr. Russo-Stringer noted: "Overall, she looks greatly improved." (Tr. 461).

Starting in July of 2013, Dr. Russo-Stringer found at every monthly visit that Plaintiff's "function is optimized with this current regimen and no side effects are reported." (Tr. 451, 455, 459, 463). With improvements in her symptoms, Plaintiff went on trips—one to Wyoming for "a few weeks" in July and another trip in September—and tolerated travelling "well." (Tr. 445, 449, 457, 461). She rode bikes with her kids and was encouraged by Dr. Russo-Stringer to continue activity modification. (Tr. 443, 467). In September, Plaintiff began volunteering for 45 minutes, two days a week, and told Dr. Russo-Stringer that was trying to return to work and wanted to begin working full time. (Tr. 457). By October of 2013 — just months before Dr. Russo-Stringer's MSS — Plaintiff reportedly increased her volunteer work to 4 days a week and was "feel[ing] more fulfilled." (Tr. 461).

These findings and notations are inconsistent with Dr. Russo-Stringer's opinion that Plaintiff suffered from extreme limitations that would preclude the performance of any type of

work. Instead, the record is most consistent with Dr. Stephen Wilson's finding that Plaintiff could perform a range of sedentary work. As such, substantial evidence supports the ALJ weighing of the opinion evidence in determining Plaintiff's residual functional capacity.

### B.  Credibility

The ALJ found Plaintiff's allegations of pain were not as severe as alleged. (Tr. 19). In reaching this conclusion, the ALJ noted that "none of the stigmata frequently observed in patients experiencing debilitating pain" were present here. (Tr. 19). Specifically, there were no "observable signs" of "drawn features, expressions of suffering, significant weight loss, poor nutrition, muscular atrophy, and poor overall health." (Tr. 19). In addition, the ALJ also questioned whether Plaintiff "may have an addiction to prescribed medication" considering the amount of narcotic medication sought and prescribed, compared with the objective record evidence. (Tr. 19). Finally, the ALJ pointed out that Plaintiff consistently told doctors that she experienced "no side effects" from her medications. (Tr. 19); (Tr. 155, 168, 451, 455, 463) (Plaintiff told doctors she did not experience any medication side effects). However, during the hearing she inconsistently testified that her medications made her "very tired" and made it "difficult to focus." (Tr. 35).

Plaintiff now challenges the first 2 reasons cited by the ALJ and argues that the ALJ "played doctor" by discrediting her allegations of pain based on "speculation" about her use of narcotic medications and the absence of "evidence of chronic pain" — e.g., drawn features, expressions of suffering, significant weight loss, poor nutrition, musculature atrophy and poor overall health. (R. Doc. 8 at 18-19)

On judicial appeal, the Court does not "re-weigh the evidence" or conduct a de novo review of the ALJ's credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir.

1994). Because the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing, his or her credibility assessment is generally entitled to great deference. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Here, having reviewed the ALJ's assigned reasons and the record as a whole, the Court finds no legal error warranting remand and the existence of substantial evidence supporting the ALJ's credibility determination.

To begin, the ALJ was free to rely on the absence of the "stigmata [(or objective findings)] frequently observed in patients experiencing debilitating pain." (Tr. 19). In fact, the Fifth Circuit has long "recognized that an absence of objective factors indicating the existence of severe pain — such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition — can itself justify the ALJ's [credibility] conclusion." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). As such, the ALJ did not commit legal error or "play doctor" when taking this absence into account. *See Espino v. Shalala*, 900 F. Supp. 95, 100 (W.D. Tex. 1995) (The ALJ may rely on "[m]edical factors which indicate disabling pain include: limitation in range of motion, muscle atrophy, weight loss or impairment of general nutrition, adverse neurological test results, noticeable swelling, and muscle spasm.").

Moreover, Plaintiff does not claim that the record in fact contains objective evidence of debilitating pain. Indeed, Plaintiff consistently reported pain at a level of 5 or 6, on a scale of 1 to 10 (Tr. 457, 445, 441, 437, 433, 259, 270, 167, 173), and Dr. Russo-Stringer noted that Plaintiff's SCS greatly improved (and in some instances "t[ook] care of" (Tr. 445)) her pain and allowed her to achieve optimal functioning. (Tr. 441, 447, 449, 451, 455, 459, 461, 463). And, as discussed above, the record does not contain they type observations associated with disabling pain. Because this alone can justify the ALJ's credibility finding, and because Plaintiff has not cited to contradictory evidence, the Court finds substantial evidence to support the decision.

For the same reason, even assuming the ALJ erred in questioning Plaintiff's use of narcotic medication, that error was harmless as the ALJ could rely on the absence of objective signs of debilitating pain to find Plaintiff's allegations were not entirely credible.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 14, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**